UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

AHMED BAHRAOUI,

    Petitioner,

v.                                                      CASE NO. 6:11-cv-1217-Orl-36DAB

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

    Respondents.

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases for the United States District Courts* (Doc. No. 16). Petitioner filed a reply to the response (Doc. No. 17).

Petitioner alleges six claims for relief in his habeas petition: (1) the prosecutor improperly stated the law and injected his personal belief, thus lowering the State's burden of proof; and trial counsel rendered ineffective assistance by (2) failing to investigate and present evidence that Petitioner regularly paid his child support payments and his driver's license had not been suspended; (3) failing to impeach witness Faustin with his prior inconsistent statement; (4) failing to impeach witness Woudeline with her handwritten

statement; (5) failing to call Petitioner's probation officer to testify; and (6) failing to investigate and present the 911 tape at trial. For the following reasons, the Court finds that Petitioner is not entitled to relief on his claims.

## I.     Procedural History

Petitioner was charged with three counts of second degree arson. After a jury trial, Petitioner was convicted as charged. The trial court sentenced Petitioner to three concurrent six-year terms of imprisonment, to be followed by four years of probation, for each count. Petitioner appealed, and the Fifth District Court of Appeal affirmed *per curiam*. Petitioner subsequently filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure in which he alleged five grounds for relief. The trial court summarily denied the motion. The appellate court affirmed *per curiam*. The instant federal petition for writ of habeas corpus follows.

## II.    Legal Standards

### A.    *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

2

28 U.S.C. § 2254(d). *See Brown v. Patton*, 544 U.S. 133, 141 (2005); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Calliper*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "[T]o be 'contrary to' clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (internal quotations and citation omitted); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown*, 544 U.S. at 134; *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S.

63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.

### B.  Standard for Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). *Newland v. Hall*, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. *Newland*, 527 F.3d at 1184. In *Strickland*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Strickland*, 466 U.S. at 687-88; *see also Bobby Van Hook*, 130 S. Ct. 13, 16 (2009). A habeas court's review of a claim under the *Strickland* standard is "doubly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (April 4, 2011) (quoting *Knowles v. Mirzayanze*, 129 S. Ct. 1411, 1420 (2009)(citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby Van Hook*, 130 S. Ct. at 17 (internal quotations and citations omitted). It is petitioner who bears the heavy burden to "prove,

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. *Id.* A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve a meritless issue. *Ladd v. Jones*, 864 F.2d 108, 109-10 (11th Cir.); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

III. *Analysis*

    A. *Claim One*

Petitioner claims the prosecutor violated his due process rights when he was allowed to make a closing argument which misstated the law, lowered the State's burden of proof, and improperly expressed his personal belief (Doc. No. 1 at 5-6; Doc. No. 2 at 5-6) The comments at issue are as follows:

    Mr. Meltzer [prosecutor]: So, the point is is [sic] that -- and you will be

getting this case -- is that the defendant does have a presumption of innocence, but now that presumption of innocence is over when you go to the jury room. You heard the evidence.

Mr. Giglioti [defense counsel]: I think that is an improper mischaracterization, again.

. . .

The Court: Your objection is overruled.

Mr. Meltzer: When you go the jury room, your presumption of innocence is done. Evidence was presented, so now the cloak of innocence is taken off. If you find that the evidence is persuasive, and you can find him guilty, this is a very serious crime, it is. And that means we need to make sure the person who committed this crime is convicted.

(App. B at 203-04).

Claims based on the statements of a prosecutor are assessed using a two-prong analysis: first, the court must determine whether the comments at issue were improper, and second, whether any comment found to be improper was so prejudicial as to render the entire trial fundamentally unfair. *Davis v. Kemp*, 829 F.2d 1522, 1526 (11th Cir. 1987). A trial is rendered fundamentally unfair if "there is a reasonable probability that, but for the prosecutor's offending remarks, the outcome . . . would have been different . . . . [A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Kemp*, 846 F.2d 1276, 1283 (11th Cir. 1988) (citations and quotations omitted); *see also Drake v. Kemp*, 762 F.2d 1449, 1458 (11th Cir. 1985).

The prosecutor's comments were improper misstatements of the law. However, the comments did not render the trial fundamentally unfair. Any potential prejudice was

6

cured by the trial court's clear instructions to the jury regarding the criminal offense charged and the burden of proof. *See United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992) (a prejudicial remark can be rendered harmless by curative instructions to the jury); *Davis v. McNeil*, No. 08-60874-CV, 2009 WL 3459226, at *24 (S.D. Fla. Oct. 27, 2009). The trial court instructed the jury that the closing arguments were not evidence (App. B at 157). Moreover, the trial court instructed the jury that because Petitioner entered a plea of not guilty, they had to presume his innocence until the State proved his guilt beyond a reasonable doubt. *Id.* at 206-07. Therefore, to the extent that the prosecutor's comment was erroneous, the comment did not impermissibly shift the burden of proof to the defense. *See Ruiz v. Sec'y, Dep't of Corr.*, 439 F. App'x 831, 834 (11th Cir. 2011) (a jury is presumed to follow jury instructions); *Puiatti v. McNeil*, 626 F.3d 1283, 1314-15 (11th Cir. 2010) (same).

Additionally, Petitioner has not demonstrated that the prosecutor improperly gave his personal opinion during this section of the closing arguments. When the closing arguments are read in context, the prosecutor argued that Petitioner should be found guilty based on the evidence presented at trial. The Florida Supreme Court has held that "[l]ogical inferences may be drawn, and counsel is allowed to advance all legitimate arguments" during his closing argument. *Thomas v. State*, 748 So. 2d 970, 984 (Fla. 1999). Thus, Petitioner has not demonstrated that the prosecutor's comments were improper or that they rendered his trial fundamentally unfair. Furthermore, there is no indication that the prosecutor's comments, if improper, had a substantial or injurious effect on the jury. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993); *United States v. Thompson*, 422 F.3d 1285, 1297

(11th Cir. 2005) (stating a prosecutor's comments must be improper and prejudicially affect the substantial rights of a defendant).

The state court's denial of this claim was not an objectively unreasonable application of clearly established federal law. Accordingly, this claim is denied pursuant to § 2254(d).

### B.    *Claim Two*

Petitioner claims that trial counsel rendered ineffective assistance by failing to investigate and present evidence that he regularly paid child support payments and his driver's license had not been suspended due to his failure to make those payments (Doc. No. 1 at 9; Doc. No. 2 at 9-10). Petitioner argues that this evidence would have refuted his former girlfriend's testimony and shown he did not commit the arson to get back at her for having to pay child support. *Id.* Petitioner attaches his pay statements which indicate that he paid his child support from August 7, 2006, through February 4, 2007 (Doc. No. 2, App. F). Petitioner also attaches a driver's license check printout from the Florida Department of Highway Safety and Motor Vehicles which indicates that Petitioner's license was revoked on September 18, 2006, for a driving under the influence conviction, and suspended on July 7, 2007, and December 24, 2007 (Doc. No. 2, App. G).

This claim was raised in Petitioner's Rule 3.850 motion (App. I). The trial court summarily denied the claim pursuant to *Strickland* (App. K). The Fifth District Court of Appeal affirmed *per curiam* (App. M).

At trial, victim Nancy Elksnitis ("Elksnitis") testified that she formerly dated Petitioner, and they have a three-year-old son (App. B at 17-18). The couple broke up in

8

April 2004. *Id.* at 18. In October 2005, Petitioner called Elksnitis and told her he was upset that his driver's license had been suspended due to nonpayment of the child support he owed her. *Id.* at 20. Petitioner told her on several occasions that he hated her and he would "get her back" and that he was angry he had to pay so much money for child support. *Id.* at 19-20. On October 30, 2006, Elksnitis discovered her green Honda Accord had been burned in a fire along with two other vehicles. *Id.* at 21-23.

First, the Court concludes that additional evidence or testimony that Petitioner paid his child support from August 2006 through February 2007 would not refute Elksnitis's testimony that Petitioner failed to pay child support in 2005. Thus, counsel cannot be deemed deficient for failing to present these records at trial. Moreover, even if Petitioner's license had not been revoked due to failure to pay child support, Petitioner cannot demonstrate that counsel's failure to present these records resulted in prejudice. Rosin Woudeline ("Woudeline") identified Petitioner as the person who was carrying a gasoline can, poured gasoline on at least one car, and started the fire (App. B at 64). Accordingly, there is not a reasonable probability that had counsel presented these documents, the outcome of trial would have been different.

The state court's determination of this claim is neither contrary to, nor an unreasonable application of, *Strickland*. Claim two is therefore denied.

### C.     Claim Three

Petitioner alleges that trial counsel rendered ineffective assistance by failing to impeach witness Bensky Faustin ("Faustin") with his prior inconsistent statement (Doc. No.

1 at 10). Petitioner maintains that Faustin had previously told police that the person who committed the arson was wearing a red shirt, however, at trial he testified that the perpetrator was wearing a white shirt (Doc. No. 2 at 10-11). Petitioner argues that because identification of the perpetrator was a feature of the trial, counsel's failure to impeach Faustin regarding this matter resulted in prejudice (Doc. No. 1 at 10; Doc. No. 2 at 12).

Petitioner raised this claim in his Rule 3.850 motion (App. I). The trial court summarily denied the claim pursuant to *Strickland*, concluding Petitioner failed to demonstrate prejudice because Faustin's written pre-trial statement indicated that the arsonist was wearing a white t-shirt, not a red t-shirt, therefore, he did not make a prior inconsistent statement (App. K). The appellate court affirmed *per curiam* (App. M).

Faustin testified at trial that on October 30, 2006, he and Woudeline were patrolling the Sand Lake apartment complex when he observed a man wearing a white t-shirt carrying a plastic gasoline near a car that had been set on fire (App. B at 41-45). Faustin's handwritten statement indicates that the man was wearing a white t-shirt (App. J). Faustin did not make a prior inconsistent statement. Thus, counsel did not act deficiently when he failed to impeach Faustin because he had no basis for impeaching Faustin with his prior testimony. *See* § 90.608(1), Fla. Stat. (stating a party may attack the credibility of a witness by introducing statements of the witness which are inconsistent with the witness's present testimony).

The state court's determination of this claim was neither contrary to, or an unreasonable application of, *Strickland*. Accordingly, claim three is denied.

### D. Claim Four

Petitioner claims trial counsel rendered ineffective assistance by failing to impeach Woudeline with her handwritten statement (Doc. No. 1 at 10). Petitioner contends that in Woudeline's handwritten statement she noted that the perpetrator's truck contained "no rims or tint." *Id.* Petitioner notes that during trial Woudeline changed her story to state that the truck did have rims. *Id.* Petitioner raised this ground in his Rule 3.850 motion (App. I). The trial court summarily denied the instant claim, finding counsel's failure to impeach Woudeline on this basis did not result in prejudice (App. K).

In her handwritten statement, Woudeline indicated that she observed the perpetrator, carrying a gas can, enter a green pick up truck without rims or tint and leave the scene of the fire (App. J). At trial, Woudeline identified the perpetrator as Petitioner (App. B at 64). Woudeline also testified that on the night the arson was committed, Petitioner drove a green pick up truck. *Id.* at 67. At no point did Woudeline testify that Petitioner's truck had rims. Because Woudeline did not testify differently than her written statement regarding this matter, counsel had no basis to impeach Woudeline with her prior written statement. *See* § 90.608(1), Fla. Stat. Thus, Petitioner has not shown that counsel acted deficiently with respect to this claim.

Additionally, even if counsel were deficient for failing to impeach Woudeline with her prior inconsistent statement, Petitioner has not demonstrated that counsel's actions resulted in prejudice. Woudeline picked Petitioner's picture out of a photo lineup and identified Petitioner in court as the person who committed the arson. There is no

11

reasonable probability that the outcome of the trial would have been different absent counsel's deficient performance.   Accordingly, this claim is denied.

   E.   *Claim Five*

Petitioner claims that trial counsel rendered ineffective assistance by failing to call his probation officer to testify at trial (Doc. No. 1 at 10-11).  Petitioner argues that his probation officer would have testified his driver's license was not suspended for his failure to pay child support as Elksnitis testified during the State's case.  *Id.;* Doc. No. 2 at 14-15. Petitioner raised this claim in his Rule 3.850 motion (App. I).  The trial court denied the claim pursuant to *Strickland* (App. K).  The Fifth District Court of Appeal affirmed *per curiam* (App. M).

As the Court noted with respect to ground two, Petitioner has not demonstrated prejudice with regard to this claim.  Even if counsel had impeached Elksnitis' testimony with evidence that his license was never suspended due to nonpayment of child support, at least one witness in this case identified Petitioner as the perpetrator of the arson. Accordingly, Petitioner has not shown a reasonable probability exists that had counsel presented this evidence, the outcome of trial would have been different. The state court's determination of this claim is not an unreasonable application of *Strickland.*  Claim five is denied pursuant to § 2254(d).

   F.   *Claim Six*

In Petitioner's final claim he alleges that trial counsel rendered ineffective assistance by failing to investigate and present the 911 recording at trial (Doc. No. 1 at 12-13).

Petitioner states that had the 911 recording been presented at trial, he would have been acquitted of the crimes because it would have demonstrated exactly what time Woudeline called 911, thus proving that he could not have committed the crimes (Doc. No. 2 at 15). Petitioner raised this claim in his Rule 3.850 motion (App. I). The trial court summarily denied the claim pursuant to *Strickland*, finding there was no reasonable probability that the introduction of the 911 call would have changed the outcome of the trial (App. K). The Fifth District Court of Appeal affirmed *per curiam* (App. M).

Petitioner presented an alibi defense at trial in which he and his employer, Kuj Tim ("Tim"), testified that they worked until approximately 9:30 to 9:45 p.m. on the night the arson was committed (App. B at 117, 126-27). Tim testified that it took 25-30 minutes to drive Petitioner home, so Petitioner would not have gotten home until 10:15. *Id.* at 128-29. Petitioner testified that it would have taken another 25 minutes to get to Elksnitis' home from his house. *Id.* at 118. Faustin testified that he saw the perpetrator set the fire some time between 10:00 p.m. and 10:45 p.m. *Id.* at 41. Emanuel Bernadet ("Bernadet"), who lived near Elksnitis, testified that on October 30, 2006, between 10:30 and 11:00 p.m., she heard a loud noise like an explosion. *Id.* at 53. Bernadet saw her vehicle, along with two other vehicles, catch fire. *Id.* On cross-examination Bernadet stated that she heard the explosion around 10:00 p.m. *Id.* at 56. Woudeline testified that the crimes were committed between 10:00 and 11:00 p.m. *Id.* at 76. Janet Nolan, who owned the third car that was burned in the fire, testified that the fires occurred at approximately 10:45 p.m. *Id.* at 8-81.

Although introduction of the 911 recording would have proved what time

Woudeline called 911, and thus, what time the fire was likely started, counsel's failure to present this evidence at trial did not result in prejudice. Even if the fire was started earlier than 10:45 p.m., the earliest time that Petitioner could have arrived at Elksnitis' home according to his own testimony, the introduction of the 911 tape would not refute Woudeline's identification of Petitioner as the perpetrator of the offenses. As such, Petitioner cannot demonstrate that but for counsel's failure to present this evidence, there is a reasonable probability that he would have been acquitted. The state court's determination of this claim is not contrary to, or an unreasonable application of, *Strickland*. Claim six is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.     *Certificate of Appealability*

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite

14

showing in these circumstances. The Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by Ahmed Bahraoui (Doc. No. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 28th day of February, 2013.

Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-3 2/28
Counsel of Record
Ahmed Bahraoui